IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31736-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| I.B.,[1] | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Invocation of the right to remain silent must be unequivocal. Here, while being held for custodial interrogation, 15-year-old I.B. shook his head in the negative after police asked him if he was willing to talk. Nevertheless, police continued their questioning and I.B. made inculpatory statements. The trial court suppressed the statements, concluding that I.B.'s shake of the head signaled an unequivocal assertion of his right to remain silent. The State appeals, arguing that I.B.'s head shake was an ambiguous act subject to multiple interpretations. We disagree and

---

[1] For purposes of this opinion, we shall use initials for the respondent's name.

No. 31736-6-III
*State v. I.B.*

affirm the trial court.

## FACTS

Police arrested 15-year-old I.B. for residential burglary. Pasco Police Officer Ryan Flanagan handcuffed I.B. and took him to an interview room at the police station. During the custodial interrogation, I.B. made inculpatory statements. These statements are not part of the record on appeal. The State charged I.B. with one count of residential burglary.

The State moved to admit I.B.'s statements. At the CrR 3.5 hearing, Police Officer Ray Aparicio testified that he read I.B. his *Miranda*[2] rights, including "special warnings for juveniles." Report of Proceedings (RP) at 7. Officer Aparicio and Officer Flanagan both testified that I.B. did not express any confusion about the warnings and did not ask questions. After the advice of *Miranda* rights, Officer Aparicio asked I.B. if he went to high school. I.B. responded "yes." RP at 7. The officer then asked I.B. if he was willing to talk with police about "some things, why we were []here." RP at 19. According to Officer Aparicio, I.B. did not respond verbally, but "shook his head side to side." RP at 8. When asked his understanding of I.B.'s response, Officer Aparicio responded, "[i]n my experience, it means 'no,' but he didn't say 'no,' so I don't know what was going

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

through his mind." RP at 12. Officer Flanagan described I.B.'s response as follows:

"[I.B.] looked away as he slightly shook his head in a fashion that I guess would mean

'no,' to an extent." RP at 19-20. Officer Flanagan admitted during cross-examination

that he understood I.B.'s head shake to mean "no." RP at 24.

The officers left the interview room to discuss whether they should stop their

questioning. They decided that I.B.'s head shaking did not sufficiently indicate his desire

for the interview to cease. After about five minutes, they returned to the interview room

and resumed questioning I.B. During cross-examination, defense counsel questioned

Officer Aparicio as follows:

> Q. Okay, so when you come back in, did you resume questioning
> [I.B.] about the incident that he had told you he didn't want to talk about?
> A. He did not tell me that he did not want to talk about it.
> Q. Well, I think we're getting a little cute here, but are, do you
> resume the questioning about the incident to which he shook his head side
> to side when asked if he wants to talk about it?
> A. Did I immediately resume?
> Q. Did anyone?
> A. Officer Flanagan talking [sic] to him about a different case.
> Q. So you switched cases at that point?
> A. Yes, and Officer Flanagan informed him that when he walked in.

RP at 13.

The officers did not reread I.B. his *Miranda* rights and questioned I.B. about a

different burglary. Eventually, the officers questioned I.B. about the residential burglary

3

Officer Aparicio was investigating. I.B. avoided eye contact during the questioning and made inculpatory statements regarding the burglaries.

At the CrR 3.5 hearing, the prosecutor argued that I.B.'s head shaking "without some sort of verbalization" was equivocal and that the break between questioning was not long enough to require readvising of *Miranda* rights. RP at 29. Defense counsel responded:

> He's a child, he's in police custody, he's already told them, I don't want to talk to you in a way that everybody understands. And instead of ceasing to talk to him, they leave the room and they come right back in, they switch officers and they switch cases. How is he supposed to know that this doesn't keep going until he starts talking?

RP at 32.

The trial court suppressed I.B.'s statements to the officers, concluding "[I.B.'s] shaking his head was an unequivocal invocation of the right to remain silent." Clerk's Papers (CP) at 18. In its oral ruling, the court stated "[i]n my mind, there could not be any more unequivocal expression, other than a shaking of a head 'no.' No means no. A defendant need not articulate in order to have an unequivocal invocation of his rights." RP at 36. Following suppression of I.B.'s statements, the case was dismissed. The State appeals the trial court's suppression of I.B.'s custodial statements.

4

ANALYSIS

The sole issue before us is whether I.B.'s shaking his head in the negative after being asked if he was willing to talk to police was an unequivocal assertion of the right to remain silent. The State construes I.B.'s head shaking as ambiguous, arguing "[I.B.'s] act of turning away and shaking his head could have communicated many things," including disbelief or discomfort. Br. of Appellant at 8. I.B. counters that his conduct clearly expressed his desire to stop communicating with police and, therefore, the court properly suppressed his statements.

### *Standard of Review*

Whether I.B. unequivocally invoked his right to remain silent is a mixed question of law and fact that is ultimately subject to de novo review. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 680-81, 327 P.3d 660 (2014). We review the trial court's findings of fact for substantial evidence and its legal conclusions from those findings de novo. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Because neither party has assigned error to any of the trial court's findings, we treat the findings as verities on appeal and confine our review to whether the trial court derived proper conclusions of law from its findings. *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).

*Fifth Amendment*

The Fifth Amendment to the United States Constitution provides that "[n]o person

. . . shall be compelled in any criminal case to be a witness against himself." To

counteract the inherent compulsion of custodial interrogation, police must administer

*Miranda* warnings. *Miranda*, 384 U.S. at 479. *Miranda* requires that the defendant "be

warned prior to any questioning that he has the right to remain silent, that anything he

says can be used against him in a court of law, that he has the right to the presence of an

attorney, and that if he cannot afford an attorney one will be appointed for him prior to

any questioning if he so desires." *Id.* Once a suspect invokes his right to remain silent,

police may not continue the interrogation or make repeated efforts to wear down the

suspect. *Id.* at 473-74; *State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014),

*cert. denied*, 135 S. Ct. 950 (2015).

A suspect need not verbally invoke his right to remain silent. In fact, *Miranda* sets

a low bar for invocation of the right: "If the individual indicates *in any manner*, at any

time prior to or during questioning, that he wishes to remain silent, the interrogation must

cease." *Miranda*, 384 U.S. at 473-74 (emphasis added). However, suspects must

"unambiguously" express their desire to be silent. *Piatnitsky*, 180 Wn.2d at 413; *see also*

*State v. Hodges*, 118 Wn. App. 668, 673, 77 P.3d 375 (2003) (invocation of the right to

remain silent must be "clear and unequivocal").

The test as to whether a suspect's invocation of his right to remain silent was unequivocal is an objective one, asking whether "'a reasonable police officer in the circumstances would understand the statement'" to be an invocation of *Miranda* rights. *Piatnitsky*, 180 Wn.2d at 413 (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994)). In *Piatnitsky*, our Supreme Court recently stated the test as follows, "[t]o be unequivocal, an invocation of *Miranda* requires the expression of an objective intent to cease communication with interrogating officers." *Id.* at 412 (footnote omitted). Once a suspect has clearly invoked the right to remain silent, police questioning must immediately cease. *Cross*, 180 Wn.2d at 674; *see Michigan v. Mosley*, 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975) (invocation of right to remain silent must be "'scrupulously honored'" by police and has the effect of "'cut[ting] off questioning'") (quoting *Miranda*, 384 U.S. at 479, 474).

The analysis is context-specific. We do not examine the statement or conduct in isolation; rather, we consider it in the context of the circumstances leading up to the alleged invocation. *Cross*, 180 Wn.2d at 682-83. While "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself," the defendant's invocation "may be characterized as

7

ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself." *Smith v. Illinois*, 469 U.S. 91, 99-100, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984) (emphasis in original). This determination requires a case-by-case analysis. *Medina v. Singletary*, 59 F.3d 1095, 1101 (11th Cir. 1995) (quoting *Christopher v. Florida*, 824 F.2d 836, 840 (11th Cir. 1987)).

### *Unequivocal Invocation of Right to Remain Silent*

The question of whether shaking one's head side to side, without verbal communication, sufficiently communicates an unequivocal desire to remain silent appears to be an issue of first impression in this state. Division One of this court has addressed whether failing to verbally articulate a desire to remain silent can invoke the right to remain silent. *Hodges*, 118 Wn. App. at 672. There, the court held that "[s]ilence in the face of repeated questioning over a period of time may constitute an invocation of the right to remain silent." *Id.* at 673. Under *Hodges,* the request "need not be articulated so long as it is clear and unequivocal." *Id.*

Cases from other jurisdictions have addressed whether nonverbal conduct can be unequivocal. In *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999), for example, the court held that "[n]on-verbal conduct, considered with other factors, can constitute voluntary consent to search." *See also United States v. Tutino*, 883 F.2d 1125,

1138 (2d Cir. 1989) (recognizing an affirmative nod of the head is evidence of an unequivocal expression of understanding); *People v. Martinez*, 106 Cal. App. 3d 524, 534, 165 Cal. Rptr. 160 (1980) (right to remain silent invoked by any conduct that "'reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time*'") (emphasis in original) (internal quotation marks omitted) (quoting *People v. Burton*, 6 Cal. 3d 375, 382, 491 P.2d 793, 99 Cal. Rptr. 1 (1971)).

Courts in other jurisdictions have also addressed the specific issue before us and concluded that a head shake may, under certain circumstances, sufficiently establish an unequivocal assertion of the right to silence. In *State v. Nash*, 279 Ga. 646, 648, 619 S.E.2d 684 (2005), the Supreme Court of Georgia found that a suspect unambiguously invoked his right to remain silent based on a videotape that showed the suspect shaking his head "'*in the negative*'" in response to the question, "'so you don't want to talk about it?'" (Emphasis in original.) In affirming the trial court's finding that the suspect had invoked his right to silence, the court noted the "appellee shook his head in the negative when asked if he wanted to talk about the victim's death and the questioning agent took appellee's response to be a refusal to talk about the incident." *Id.*

9

Under similar facts, the Supreme Court of Massachusetts reached the same

conclusion in *Commonwealth v. Clarke*, 461 Mass. 336, 960 N.E.2d 306 (2012). There,

after arresting the defendant and advising him of his *Miranda* rights, police asked him,

"'You just want to go home? So you don't want to speak?'" *Id.* at 338. The defendant

responded by shaking his head back and forth "in a negative fashion." *Id.* at 340. The

interrogating detective interpreted the defendant's head motion to mean that "'he didn't

want to speak.'" *Id.* at 338. Based on the defendant's youth (early 20s), negative head

shake, and overall reluctance to speak with the detective, the trial court concluded that the

defendant unambiguously invoked his right to remain silent. *Id.* at 340. The court

affirmed, finding the defendant's head shake expressed "affirmative conduct indicating

his desire to end police questioning." *Id.* at 343. In support of its decision, the court

noted that the detective's question was not investigatory, but directly concerned the right

to remain silent, and that the detective understood the defendant's head motion to mean

that he did not want to speak. *Id.*

These cases support the trial court's conclusion that I.B. unequivocally invoked his

right to remain silent. Nothing in the circumstances leading up to I.B.'s invocation render

his head movement ambiguous. The court's unchallenged findings establish that Officer

Aparicio read I.B. his *Miranda* rights and that I.B. understood his rights. The court also

found that after being asked if he was willing to speak with police, "[I.B.] looked away and slightly shook his head side to side. [I.B.] did not speak." CP at 17. And similar to *Clarke* and *Nash*, the court found that "[b]oth officers testified they understand shaking the head side to side to communicate the word 'no.'" CP at 17.

Moreover, similar to *Clarke*, Officer Aparicio's question was not investigatory, but directly concerned I.B.'s right to remain silent. In response to the officer's direct question—whether I.B. wanted to talk about "why we were []here"—I.B. shook his head "no." RP at 19-20. This affirmative conduct unambiguously signaled I.B.'s desire for the questioning to cease. *See Clarke*, 461 Mass. at 343. At that point, police were required to honor his request and immediately cease their questions. The trial court properly suppressed I.B.'s custodial statements.

Affirm.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.

11