# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46850-6-II |
| Respondent, | |
| v. | |
| MICHAL REINHARD LARISCH, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michal Larisch appeals his convictions and sentence for one count of possession of stolen property in the second degree, one count of possession of a stolen vehicle, and two counts of trafficking in stolen property in the first degree. He argues that the trial court erred by allowing the State to comment on his right to remain silent and that he received ineffective assistance of counsel because his counsel failed to object. He additionally argues the State did not provide sufficient evidence to support one of his convictions, the trial court erroneously imposed an exceptional sentence after miscalculating his offender score, and the trial court erred by imposing legal financial obligations (LFOs) without considering his ability to pay. Larisch also filed a statement of additional grounds (SAG), making assertions related to the State's conduct, venue, and evidentiary rulings. We affirm the trial court.

## FACTS

### I. GENERAL OVERVIEW

On July 3, 2014 at approximately 7:00 A.M., Ralph McEntyre arrived at the nursery he and his brother Gary Gray own in Rochester. He found the normally closed gate ajar and the lock

broken off. The owners noticed several items were missing including a Kubota diesel self-propelled excavator, a 20-foot equipment trailer, an extra digging bucket, and "[t]ie-downs." 1 Report of Proceedings (RP) at 45. They also found glass on the ground but were unsure of its source. Officer Daryl Leischner responded to the nursery.

The brothers stated that the missing items had distinctive marks on them, such as a burn mark on the seat, a hole in the roof, and a dent on the left side of the excavator, as well as custom made tie downs and a serial number on the trailer. The brothers purchased the trailer a year before and paid $6,500, plus tax. The excavator cost $35,000, but according to McEntyre, a replacement would be approximately$48,000.

On the same day, at approximately 5:30 A.M., and about three miles away from the nursery, a 1995 GMC 2500 white truck was stolen from Auto Tech Services. The truck had a 6.5 diesel engine and a manual transmission. When employees arrived, they noticed a pile of glass where the truck had been parked the night before; the glass was located where the driver's side door would have been. Leischner also responded to the Auto Tech Services scene and stated that the glass looked "[v]ery similar" to that found at the nursery. 2 RP at 169. An employee and Leischner reviewed surveillance footage and saw a man break into the truck. Because of the poor video quality, they could not get a good look at the person. No one had permission to take the truck. The truck itself was never recovered.

McEntyre and Gray found the excavator about a month after the theft. They posted a reward on Facebook asking for information about the missing items from the nursery. Gray received a tip in response to his Facebook post, located what he thought was the excavator, and then called the police. The excavator was on property owned by Terry Petrich, and according to Petrich it had been there about two weeks. Among other damage, the control panel had been

smashed out, the ignition had been cut and thrown away, and a new one had been installed that allowed it to be started without the key.

The brothers also found the trailer a few days later and identified it despite damage and the fact that the most visible serial number had been ground off. However, the serial number was also found underneath the trailer and matched the brothers' trailer. It was on property owned by Gary Fisher. Fisher purchased the trailer from Larisch in July or August for $1,500.

While the police were on Petrich's property investigating the crimes, Petrich pointed out a passing truck to the officers. Petrich told Deputy Jeffrey Humphrey that he had traded that truck and other vehicles to Larisch for the excavator. He also stated that Larisch delivered the excavator to his property on a trailer. Withrow followed and stopped the truck driven by Larisch, who drove at a high rate of speed on a curvy road. Prior to Withrow turning on his emergency lights, Larisch immediately and sharply turned into a driveway when the officer pulled up behind him. Withrow contacted Larisch, who stated that he was going to Petrich's but did not stop because he saw the police.

Humphrey arrived at the scene to question Larisch. Larisch denied knowing anything about the excavator. But, after Humphrey asked him about an excavator bucket in the back of Larisch's truck, Larisch stated that he had worked on the excavator for Petrich, including working on the bucket and doing some wiring. Police took Larisch into custody for driving with a suspended license.

A few days later, on August 5, Humphrey went to Brandon Perry's residence. There, Humphrey saw an engine and a transmission hanging from a tree. Perry told Humphrey he had possessed the diesel engine and manual transmission for three or four days and had paid Larisch $500 in cash for them. The officers could not confirm that the engine and transmission were from

the stolen truck but they were the same make and model. Another person told the police he believed that Larisch sold Perry a diesel engine sometime in the middle of July.

Later that same day, Humphrey reinterviewed Larisch, who was in custody. Larisch again told Humphrey that he had done some work on the excavator for Petrich, but he denied taking it. Humphrey then asked Larisch about selling the engine and transmission out of a GMC truck to Perry. Larisch "dropped his head, closed his eyes, [and] began slightly shaking his head." 1 RP at 96. Humphrey believed this gesture meant Larisch knew "he had been caught." 1 RP at 104.

II.     PROCEDURAL FACTS

On September 18, 2014, the State charged Larisch with six crimes arising from events between July 3, 2014 and August 2, 2014: one count of possession of a stolen vehicle, a Kubota excavator (count I); one count of possession of stolen property in the second degree, a trailer and excavator bucket (count II); one count of possession of a stolen vehicle, a GMC Caballero (count III); and three counts of trafficking in stolen property in the first degree, respectively a Kubota excavator, a trailer, and a vehicle engine (counts IV, V, and VI).

On the morning of trial, the court held a CrR 3.5 hearing to determine the admissibility of Larisch's statements while in police custody. The State called Withrow and Humphrey to testify. The State argued that all of Larisch's statements, excluding his invocation of his right to remain silent, but including the gesture he made prior, were admissible. The defense did not present witnesses or argument.

The court made written findings that on August 2, 2014, after stopping Larisch, Withrow read Larisch his *Miranda*[1] rights, Larisch waived his rights, and spoke to the police. The court also found that Humphrey spoke with Larisch on August 5 while Larisch was in custody on other

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

matters, Humphrey asked if Larisch remembered his *Miranda* rights, and after Larisch told Humphrey he did, Humphrey confronted Larisch about selling an engine to Perry. In its findings of fact 1.7 and 1.8, the court stated that Larisch "made a gesture in which he sagged his body and looked down at the ground, which Dep. Humphrey understood as an indication that Larisch knew he had been caught," and that Larisch said he did not want to talk any further. CP at 104-05. The court concluded that Larisch was reminded of his *Miranda* warnings before speaking with Humphrey on August 5 and Larisch indicated he understood them. Further, the court concluded the statements were admissible and it treated the gesture as the equivalent of "a verbal statement."[2] CP at 105.

Larisch's jury trial began and the State's witnesses testified consistently with the facts previously stated. The defense put on one witness, Sean Sullivan, who stated that Petrich tried to sell him the excavator but he was not interested. In closing argument, the State presented the theory that Larisch stole the truck, took it to the nursery, hooked the trailer up, put the excavator and extra bucket on the trailer, and drove away. The defense argued that the charges were attributable to Petrich, not Larisch.

The jury returned guilty verdicts on counts I, II, V, and VI. It acquitted Larisch on counts III and IV.

The trial court imposed 96 months of incarceration. The court ran counts II, V, and VI concurrent with each other, but consecutive to count I. Larisch had five prior convictions, two for taking a motor vehicle. Because of Larisch's prior convictions, he had an offender score of 9. The

---

[2] "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." ER 801(a).

court imposed an exceptional sentence, finding that "as a result of the defendant's high offender score, Count I would go unpunished if not run consecutively." CP at 109.

The court imposed $4,397.20 in LFOs, $3,597.20 of which were discretionary. Larisch appeals.

## ANALYSIS

I.     RIGHT TO REMAIN SILENT

Larisch argues the trial court erroneously admitted Humphrey's testimony about Larisch's gesture because it commented on Larisch's right to remain silent. He further contends that his trial counsel was ineffective because he failed to object. We disagree.

A.     Comment on Larisch's Silence

Larisch argues that the trial court violated the Fifth Amendment of the United States Constitution and article 1, section 9 of the Washington State Constitution by admitting testimony and allowing argument about his invocation of the right to remain silent. The State contends that the court properly concluded Larisch gestured in response to a question and had not yet invoked his right to remain silent. We agree with the State.

1.     Standard of Review

Both the federal and state constitutions provide that a criminal defendant cannot be compelled to provide evidence against himself. U.S. CONST. amend. V; WASH. CONST. art 1, § 9. Every person has the right to remain silent in both pre-arrest and post-arrest situations, and the State cannot use this silence as substantive evidence of guilt. *State v. Slone*, 133 Wn. App. 120, 127, 134 P.3d 1217 (2006).

We review the question of whether a defendant invoked his right to remain silent as a mixed question of law and fact, ultimately reviewed de novo. *State v. I.B.*, 187 Wn. App. 315, 319-20,

348 P.3d 1250 (2015). We review the trial court's findings of fact for substantial evidence and its legal conclusions from those findings de novo. *I.B.*, 187 Wn. App. at 320. Unchallenged findings of fact are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). "The test as to whether a suspect's invocation of his right to remain silent was unequivocal is an objective one, asking whether 'a reasonable police officer in the circumstances would understand the statement' to be an invocation of *Miranda* rights." *I.B.*, 187 Wn. App. at 321 (quoting *State v. Piatnitsky*, 180 Wn.2d 407, 413, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 950 (2015)). When invoking the right to remain silent is not clear or unequivocal, the police are not required to ask clarifying questions and may even continue interviewing a suspect. *State v. Walker*, 129 Wn. App. 258, 276, 118 P.3d 935 (2005).

After a defendant is *Mirandized* and therefore advised of the right to remain silent, an ensuing silence may be the exercise of that right, making post-arrest silence "'ambiguous.'" *State v. Fricks*, 91 Wn.2d 391, 395, 588 P.2d 1328 (1979) (quoting *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976)). "Calling attention to that silence, and suggesting thereby that an unfavorable inference might be drawn, violates due process." *Fricks*, 91 Wn.2d at 395.

We review a trial court's decision as to admissibility of any statements under an abuse of discretion standard. *State v. Cross*, 156 Wn.2d 580, 619, 132 P.3d 80 (2006). The trial court abuses its discretion when the exercise of its discretion is "'manifestly unreasonable or based on untenable grounds or reasons.'" *State v. Quaale*, 182 Wn.2d 191, 197, 340 P.3d 213 (2014) (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

2.      Invocation of the Right to Remain Silent

Larisch argues he verbally and nonverbally exercised his right to remain silent. He argues his case is similar to *State v. Easter*, 130 Wn.2d 228, 241, 922 P.2d 1285 (1996), in which our

7

Supreme Court held that the State violated Easter's right to remain silent through witness testimony and its argument that Easter was "evasive." The State contends the court properly concluded that Larisch's gesture was an answer to a question and not an invocation of the right to remain silent. We agree with the State.

In *State v. Hager*, 171 Wn.2d 151,157-58, 248 P.3d 512 (2011), a detective used the word "evasive" to describe the defendant's answers to questions, not to describe the defendant's silence. The court held the detective did not comment on the defendant's right to remain silent. *Hager*, 171 Wn.2d at 158. Here, the trial court specifically concluded Larisch's gesture was a statement and not an invocation of his right to remain silent. It found that after Larisch waived his *Miranda* rights, Humphrey spoke with Larisch on August 5, and confronted him with selling the engine to Perry. The court found that Larisch "made a gesture in which he sagged his body and looked down at the ground, which Dep. Humphrey understood as an indication that Larisch knew he had been caught" and then found, "Larisch further stated that he did not want to talk any further about the incident." CP at 104-05. Larisch does not assign error to any findings of fact, therefore we consider them verities on appeal. *See Homan*, 181 Wn.2d at 106.

The trial court considered Larisch's gesture and his invocation of the right separately. It admitted the gesture, but suppressed Larisch's invocation of his right to remain silent immediately thereafter. An invocation of the right to remain silent must be unequivocal. Here, a reasonable officer under the circumstances would not necessarily understand Larisch's conduct, i.e. his gesture to be such an assertion. *I.B.*, 187 Wn. App. at 321. Similar to the defendant in *Hager*, Larisch gestured as an answer to a question, not as an invocation of silence. We conclude the trial court properly treated the two statements as separate, one as an answer to a question and one as an invocation of the right to remain silent.

8

This case is unlike our decision in *State v. Fuller*, 169 Wn. App. 797, 282 P.3d 126 (2012). In *Fuller*, the defendant invoked his right to silence in response to some police questions. 169 Wn. App. at 816. We held that the State erred by commenting on the silence throughout the trial, stating that the defendant did not deny his guilt, because the silence was not otherwise admissible. *Fuller*, 169 Wn. App. at 816, 818-19. We conclude the State did not comment on Larisch's right to remain silent. It commented on his gesture, a statement.[3]

Therefore, the trial court properly concluded that Larisch's gesture was not an invocation of the right to remain silent. Furthermore, the trial court had discretion to admit statements so long as the exercise of the discretion was reasonable or based on tenable grounds or reasons. *See Quaale*, 182 Wn.2d at 197. Here, the court articulated its reasoning clearly in its findings and conclusions. The court did not abuse its discretion by admitting the statement.

B.      Ineffective Assistance of Counsel

Larisch contends that he received ineffective assistance of counsel because his trial counsel did not object when the State asked Humphrey his opinion about Larisch's gesture. We disagree.

1.      Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove ineffective assistance of counsel, an appellant must show that (1) counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that (2) the deficient performance prejudiced him, to the extent that there is a reasonable probability the deficient performance affected the outcome of the trial. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (applying test from *Strickland v. Washington*, 466 U.S.

---

[3] The State referenced the gesture in two places during the trial: once by asking Humphrey what he interpreted the gesture to mean, to which Humphrey said that Larisch knew "he had been caught," 1 RP at 104, and once briefly during closing argument.

9

668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). To succeed on an ineffective assistance of counsel claim based on defense counsel's failure to object, an appellant must show that the objection would have likely succeeded. *State v. Gerdts*, 136 Wn. App. 720, 726-27, 150 P.3d 627 (2007). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

### 2. Failure to Object

Larisch's claim is based on a specific question and answer to which his trial counsel did not object. He states that the exchange quoted below was the "functional equivalent" of saying, "I think the defendant is guilty." Br. of Appellant at 27. The exchange took place during direct examination of Humphrey:

> [State]: [The defense attorney] asked you about the meaning of the gesture that Mr. Larisch made when you told him about Brandon Perry buying this engine from him. What meaning did you take from the gesture that Mr. Larisch made?
>
> [Humphrey]: That he had been caught.

1 RP at 104.

Larisch argues that there is a reasonable probability that but for his counsel's failure to object, the result on count VI would have been different. We disagree. Overwhelming evidence, other than the above statement, supported count VI. Because overwhelming evidence, other than the above statement, supported count VI and because Larisch fails to show prejudice, his ineffective assistance of counsel claim does not succeed.

## II. SUFFICIENCY OF THE EVIDENCE

Larisch argues the State failed to provide substantial evidence to support his conviction for count VI, first degree trafficking in stolen property. We disagree.

A.      Standard of Review

The State is required to prove all elements of a crime charged beyond a reasonable doubt. *State v. Colquitt*, 133 Wn. App. 789, 796, 137 P.3d 892 (2006). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

B.      Trafficking in Stolen Property

Larisch contends that the State failed to prove that the property in question was stolen. He argues the State did not compare the stolen items to the recovered items, and therefore only established a mere suspicion that the property was stolen. However, the State can establish its case through both direct and circumstantial evidence. *See Delmarter*, 94 Wn.2d at 638.

RCW 9A.82.050(1) states, "A person who knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others, or who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree." To convict Larisch of count VI, the State had to prove beyond a reasonable doubt that he "[k]nowingly initiated, organized, planned, financed, directed, managed, or supervised the theft" of the vehicle engine for sale to others, or "knowingly trafficked" the engine with knowledge that it was stolen, in Washington. CP at 63 (Instr. 24).

11

The State provided testimony from an individual, who said Larisch acquired a diesel engine in the middle of July and sold it to Perry. The State also provided testimony from the owner of the truck and an employee of the Auto Tech Service store who established that a truck was stolen on July 3, 2014, that the engine was a 6.5 diesel, and that the transmission was manual. Humphrey then found a diesel engine and manual transmission at Perry's home and learned that Perry purchased them from Larisch a few days before for $500. Viewing the direct and circumstantial evidence in the light most favorable to the State, sufficient evidence existed from which a rational jury could find Larisch guilty beyond a reasonable doubt.

III.    SENTENCING

Larisch argues that the trial court improperly calculated his offender score by counting each count as separate criminal conduct and erred by imposing an exceptional sentence based on its miscalculation. He contends that counts I, II, and V, constitute the "same criminal conduct." Br. of Appellant at 34. The State contends that Larisch failed to preserve this argument by not objecting at sentencing. We agree with the State.

If an appellant does not argue "same criminal conduct" at sentencing, the argument is waived on appeal. *State v. Brown*, 159 Wn. App. 1, 16-17, 248 P.3d 518 (2010). Larisch did not argue same criminal conduct at sentencing or at any other time. Therefore, we consider the issue waived and do not address it.

RCW 9.94A.589(1)(a) provides,

[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score. . . . Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535.

Under, RCW 9.94A.535, "The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." One such reason to impose an aggravated exceptional sentences is when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished. RCW 9.94A.535(2)(c).

We review an exceptional sentence under the abuse of discretion standard. *State v. Hovig*, 149 Wn. App. 1, 15, 202 P.3d 318 (2009). "A trial court abuses its discretion with regard to sentencing length in two ways: (1) by relying on an impermissible reason; or (2) by 'impos[ing] a sentence which is so long that, in light of the record, it shocks the conscience of the reviewing court.'" *Hovig*, 149 Wn. App. at 15 (quoting *State v. Ritchie*, 126 Wn.2d 388, 396, 894 P.2d 1308 (1995)) (alteration in original).

Due to Larisch's prior offense history, he had an offender score of 9. The trial court sentenced Larisch to 43 months of confinement on count I. The court counted counts II, V, and VI as three points for other current offenses and ran count I consecutively to II, V, and VI. Therefore, Larisch's offender score was 12. The trial court imposed an exceptional sentence stating, "[A]s a result of the defendant's high offender score, Count I would go unpunished if not run consecutively." CP at 109. Because the trial court did not rely on an impermissible reason and the sentence does not "shock the conscience," we conclude that the trial court did not abuse its discretion by running count I consecutively. *Hovig*, 149 Wn. App. at 15.

IV.    LEGAL FINANCIAL OBLIGATIONS

Larisch contends that the trial court imposed LFOs without inquiring into his ability to pay.[4] He argues that he is a 50-year-old man, who will be in prison for 96 months, and therefore, he will not be able to pay. However, "[u]npreserved LFO errors do not command review as a matter of right." *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015). We may use our discretion to decline review of unpreserved LFO claims. *Blazina*, 182 Wn.2d at 830.

Larisch's sentencing hearing took place more than a year after our decision in *State v. Blazina*, 174 Wn. App. 906, 301 P.3d 492 (2013), which was affirmed by our Supreme Court. *Blazina*, 182 Wn.2d at 830. Larisch was therefore on notice that he needed to object at sentencing to preserve the claim for appeal. Larisch did not object. We decline to review this issue.

V.    STATEMENT OF ADDITIONAL GROUNDS

A.    Misstating the Evidence

Larisch argues the State told the jury in closing argument that Larisch admitted to possessing the excavator, which was false. In other words, he contends that the prosecutor committed misconduct by arguing facts not in evidence. We disagree.

To prevail on his claim of prosecutorial misconduct, Larisch must establish that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We review alleged improper statements in the context of the entire argument, the issues in the case, and evidence presented at trial. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

---

[4] Larisch does not distinguish between the mandatory and discretionary LFOs. As Washington courts have previously noted, this is an important distinction because the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing mandatory LFOs. *State v. Lundy*, 176 Wn. App. 96, 102-03, 308 P.3d 755 (2013). These fees include victim restitution, victim assessments, DNA fees, and criminal filing fees. *Lundy*, 176 Wn. App. at 102.

If Larisch can establish that the prosecutor's conduct was improper, we review the conduct for prejudice under one of two standards, depending on whether Larisch objected. *Emery*, 174 Wn.2d at 760-61. When a defendant fails to object to alleged misconduct, the defendant waives the error unless he can show that the misconduct was so flagrant and ill-intentioned that no instruction could cure the prejudice, and that the prejudice had a "'substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

Here, the prosecutor stated,

> So even if for whatever reason you decided he was not the person who actually did the taking, he sure had the excavator. He worked on it on Mr. Petrich's property and he traded Mr. Petrich cars in exchange for the use of the excavator and he admitted that he had done work on it and he was in possession of it even if he hadn't been the one who stole it.

2 RP at 284. Larisch's admission came into evidence through Humphrey who testified that during his two interviews with Larisch, Larisch told him he had done work on the excavator, including running it and doing some wiring. Petrich stated that he traded Larisch some vehicles for the excavator. The evidence and its reasonable inferences support the prosecutor's argument.[5]

B.      Referring to Equipment as Motor Vehicles

Larisch states, "I have read other cases of stolen equipment, none were called motor vehicles. I feel this was done to raise my points. It had a serial [number] not a vin [number.]" SAG at 1. To the extent that Larisch is arguing that the excavator was improperly classified as a motor vehicle or that insufficient evidence existed to prove the excavator was a motor vehicle, we disagree.

---

[5] Because the argument was proper, we need not analyze for prejudice.

The State used the word "vehicle" only in reference to the excavator or the truck. RCW 46.04.320 defines a motor vehicle as "every vehicle that is self-propelled and every vehicle that is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." The court provided this definition to the jury in its instructions. McEntyre testified that the excavator was self-propelled and ran on diesel. Larisch's claim lacks merit.

C.      Venue

Larisch states, "Gary Fisher claimed I delivered the trailer to his home in Thurston County. [H]e said he did not remember if it had a license plate on it. Can I be charged for a crime in [L]ewis County that was claimed to have happened in Thurston County?" SAG at 3. To the extent Larisch means to contest venue for count V, charging him with trafficking of the trailer in Washington in the first degree, we disagree.

Article 1, section 22 of the Washington State Constitution, provides that the defendant has a right "to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." However, venue need not be proved beyond a reasonable doubt and is waived if not challenged during the course of the trial. *State v. Dent*, 123 Wn.2d 467, 481, 869 P.2d 392 (1994). If the State acquiesces to a "to convict" jury instruction that includes venue as a necessary element, even though venue is not a required element, the instruction becomes the "law of the case" and the State assumes the burden of proving it beyond a reasonable double. *State v. Hickman*, 135 Wn.2d 97, 105, 954 P.2d 900 (1998). Where evidence introduced during the trial may raise a question of venue for the first time, the defendant must raise the issue at the end of the State's case. *Dent*, 123 Wn.2d at 480.

The to convict instruction on count V did not specify Lewis County as an element of the crime that the State had to prove beyond a reasonable doubt. Larisch did not raise venue at any

point during trial. Sufficient evidence existed to prove beyond a reasonable doubt that the crime occurred in the State of Washington. Therefore, Larisch waived the issue of venue, the court properly instructed the jury, and sufficient evidence supported Larisch's conviction for count V.

D. Hearsay

Larisch states, "The jury heard lots of hearsay from the State about an engine Brandon [P]erry bought. I never heard or [saw] Brandon Perry in court." SAG at 3. To the extent that Larisch is arguing that the trial court erred by admitting hearsay testimony, we conclude the issue was not preserved because there was no objection. To the extent that Larisch is arguing insufficient evidence for count VI, the issue is addressed above.

From our review of the record, it only seems possible that Larisch is referring to Humphrey's testimony in which he states that when he went to Perry's home, Perry told him he acquired the engine and transmission a few days before from Larisch for $500 cash. These statements occurred during defense counsel's cross-examination. Defense counsel asked, "Do you know how long he had had [the engine and transmission]?" to which Humphrey responded, "He told me around three or four days prior to me contacting him." 1 RP at 102-03. Defense counsel then asked, "Did you ever see a bill of sale for this transmission and the engine?" to which Humphrey responded, "Mr. Perry told me that he paid Mr. Larisch $500 cash. There was no bill of sale." 1 RP at 103. Defense counsel did not move to strike the testimony and therefore did not preserve the issue for our review. *See* RAP 2.5(a); *see also State v. Smith*, 155 Wn.2d 496, 501, 120 P.3d 559 (2005) (holding an objection on different grounds was insufficient to preserve a hearsay objection for appeal). We do not consider the issue.

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Sutton, J.