# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47057-8-II |
| Respondent, | |
| v. | |
| JARROD ALAN WIEBE, | PART PUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — A jury found Jarrod A. Wiebe guilty as an accomplice to burglary, kidnapping, robbery, extortion, criminal impersonation, and firearm theft. In the published portion of the opinion, we hold that the accomplice liability statute, specifically the termination of complicity provision under RCW 9A.08.020(5)(b), did not create either a negating defense or an affirmative defense and that the burden to prove Wiebe was an accomplice fell on the State. We further hold that neither the trial court's accomplice jury instructions nor the State's closing argument shifted the burden of proof to the defendant nor did these instructions deny Wiebe his choice of defense. In the unpublished portion, we hold that Wiebe did not unequivocally invoke his right to silence and that the peremptory challenge procedure did not violate Wiebe's public trial right. We affirm his convictions.

FACTS

In December 2013, Wiebe and three other men drove to the home of Casimiro Arellano and his partner on a dairy farm. The three other men, dressed in camouflage and one wearing a "SWAT" vest, forcibly entered the home, jumped on Arellano, and tied his hands behind his back. The men took money and guns belonging to Arellano, and one of them asked for more money in exchange for not calling the police or immigration to arrest Arellano and his partner. Wiebe stood outside the front door during the incident and knocked on the door when he saw anyone. Wiebe entered the house to bring in two dairy farm workers and/or to carry the guns from the home to the men's car. Wiebe was charged as an accomplice to burglary, kidnapping, robbery, extortion, criminal impersonation, and firearm theft.

After the parties presented evidence at trial, the trial court instructed the jury that the State bore the burden of proving every element of every crime charged. The trial court also instructed the jury that a person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he aids or agrees to aid in the commission of the crime. The trial court further instructed the jury, over Wiebe's objection, that

> [a] person is not an accomplice in a crime committed by another person if he or she terminates his or her complicity prior to the commission of the crime, and either gives timely warning to the law enforcement authorities or otherwise makes a good faith effort to prevent the commission of the crime.

Clerk's Papers (CP) at 48.

In closing argument, the State repeated the basic definition of accomplice liability from the jury instructions and argued that Wiebe aided and assisted in the commission of the crimes charged. The State also reiterated the elements of each crime. Finally, the State noted that Wiebe did not try to prevent the crimes from occurring and did not contact the police as evidenced by the

data from his phone.  At no time did the State argue that Wiebe bore the burden of proof.  The

defense argued that the State had not met the "with knowledge" element of accomplice liability.

The jury convicted Wiebe of burglary, kidnapping, robbery, extortion, criminal

impersonation, and 10 counts of theft of a firearm.  Wiebe appeals.

ANALYSIS

ACCOMPLICE JURY INSTRUCTIONS

Wiebe argues that the trial court improperly instructed the jury regarding termination of

complicity and improperly shifted the burden of proof to him.  We disagree.

A.  STANDARD OF REVIEW AND RULES OF LAW

We review jury instruction errors based on legal rulings de novo.  *See State v. Benn*, 120

Wn.2d 631, 654-55, 845 P.2d 289 (1993).  Jury instructions are proper when they permit the parties

to argue their theories of the case, do not mislead the jury, and properly inform the jury of the

applicable law.  *State v. Carson*, 179 Wn. App. 961, 984, 320 P.3d 185 (2014), *aff'd*, 184 Wn.2d

207, 357 P.3d 1064 (2015).  The rule is well established that instructions must be read together

and viewed as a whole.  *State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998).  A jury

is presumed to follow the court's instructions.  *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d

125 (2007).

RCW 9A.08.020(5) sets out the rules for accomplice liability and states in relevant part

that

> [u]nless otherwise provided by this title or by the law defining the crime, a person
> is not an accomplice in a crime committed by another person if:
>     . . . .
>     (b) He or she terminates his or her complicity prior to the commission of
> the crime, and either gives timely warning to the law enforcement authorities or
> otherwise makes a good faith effort to prevent the commission of the crime.

There are two types of defenses in Washington State: affirmative defenses and quasi-defenses. 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW, § 105, at 7 (2d ed. 1998). The defendant bears the burden of proving an affirmative defense by a preponderance of the evidence by setting forth facts that entitle the defendant to acquittal, even if the State proves every element of the crime charged. *State v. Riker*, 123 Wn.2d 351, 367-68, 869 P.2d 43 (1994) (analyzing the defense of duress); *State v. Lively*, 130 Wn.2d 1, 12-13, 921 P.2d 1035 (1996) (analyzing the defense of entrapment).

A quasi-defense, also called a "negating defense," consists of facts that negate one or more of the elements of the crime. *State v. Hicks*, 102 Wn.2d 182, 187, 683 P.2d 186 (1984) (holding the defense of a good faith claim of title negates the element of intent to steal for robbery). The State bears the burden of disproving a negating defense beyond a reasonable doubt because the constitution does not allow a defendant to bear the burden of disproving an element of the crime. *State v. W.R., Jr.*, 181 Wn.2d 757, 770, 336 P.3d 1134 (2014).

### B. BURDEN OF PROOF, NEGATING DEFENSE, AND AFFIRMATIVE DEFENSE

Wiebe argues that because RCW 9A.08.020(5)(b) sets forth a negating defense, the State bears the burden of proving that complicity has terminated. He also argues alternatively that RCW 9A.08.020(5)(b) created an affirmative defense and that the jury likely believed he had the burden to prove complicity had terminated. His arguments are unpersuasive.

Wiebe cites no case holding that RCW 9A.08.020(5) constitutes either a negating defense or an affirmative defense. Wiebe relies on *State v. Handley*, 115 Wn.2d 275, 796 P.2d 1266 (1990), *State v. Whitaker*, 133 Wn. App. 199, 135 P.3d 923 (2006), and *W.R.* to show that the termination

of complicity under the accomplice liability statute constitutes a defense. But these cases do not establish Wiebe's proposition.

The Supreme Court in *Handley* merely referred to RCW 9A.08.020(5)(b) as the "'withdrawal' defense to accomplice liability," while discussing whether a "similar defense" would be available for an anticipatory offense. 115 Wn.2d at 293. But *Handley* referred to the "withdrawal defense" only in passing and did not address whether RCW 9A.08.020(5)(b) established a defense nor what burden of proof would apply to it. *See* 115 Wn.2d at 293.

And in *Whitaker*, the jury was instructed that a person is not an accomplice if he terminates his complicity before the commission of the crime and makes a good faith effort to prevent the crime, but the instruction was not referred to as a "defense." 133 Wn. App. at 235-36. There, the defendant argued that he tried to prevent a murder, the prosecution responded that this claim was unsupported and contradicted by the evidence, and the defendant then argued that the prosecutor's argument was misconduct because it "shifted the burden of proof." *Whitaker*, 133 Wn. App. at 235. The court rejected this argument and held that each party was entitled to present argument as to whether the defendant's actions constituted a good faith effort to prevent the commission of the crime and the prosecutor's argument did not shift the burden to the defendant. *Whitaker*, 133 Wn. App. at 235-36. Thus, *Handley* and *Whitaker* do not establish that RCW 9A.08.020(5)(b) constitutes either a negating defense or affirmative defense.

Finally, Wiebe tries to analogize RCW 9A.08.020 to the issue in *W.R.* to argue that termination of accomplice complicity is a negating defense. But *W.R.* is not analogous. There, the Supreme Court held that the State must bear the burden of disproving a "consent" defense where the defense necessarily negates an element of the completed crime. *W.R.*, 181 Wn.2d at

765-66. The court held that the element of forcible compulsion for the crime of second degree rape cannot co-exist with the defense of consent because there is no forcible compulsion if the victim consents. *W.R.*, 181 Wn.2d at 765-66.

Wiebe argues that because accomplice liability hinges on a person knowingly promoting or facilitating a crime, if a person terminates complicity or tries to prevent the crime by calling police, then he cannot have promoted, aided, or agreed to aid in the crime and, thus, this defense negates elements of the accomplice liability. Wiebe cites no direct authority for this proposition. His argument is not persuasive because one *can* knowingly promote or facilitate the commission of a crime and then later terminate that complicity by calling the police. This is precisely what RCW 9A.08.020(5)(b) contemplates. Wiebe has not shown that accomplice liability cannot co-exist with a later termination of accomplice complicity. Wiebe's argument fails.

We conclude that termination of complicity as found in RCW 9A.08.020(5)(b) is part of the definition of accomplice liability. We hold that RCW 9A.08.020(5)(b) creates neither a negating defense nor an affirmative defense and we conclude that the trial court properly instructed the jury.

## C. RIGHT TO CONTROL DEFENSE

Next, Wiebe argues that the trial court violated his Sixth Amendment right to control and choose his defense when the jury was instructed, over his objection, about when accomplice liability ends. We disagree.

Implicit in the Sixth Amendment is a criminal defendant's right to control his defense. *State v. Jones*, 99 Wn.2d 735, 740, 664 P.2d 1216 (1983). Instructing the jury on an affirmative defense over the defendant's objection violates the Sixth Amendment by interfering with the

defendant's autonomy to present a defense. *State v. Lynch*, 178 Wn.2d 487, 492, 309 P.3d 482 (2013).

But as discussed above, termination of complicity is not an affirmative defense. Wiebe attempts to analogize this case to *Lynch*, in which the Supreme Court held that the trial court violated Lynch's right to control his defense when the trial court instructed the jury on the affirmative defense of consent to a charge of rape over Lynch's objection. 178 Wn.2d at 493. But again, Wiebe does not offer any authority that demonstrates that RCW 9A.08.020(5)(b) is an affirmative defense.

Accordingly Wiebe was not denied his right to control his own defense when the trial court instructed the jury regarding termination of complicity over Wiebe's objection.

D. CLOSING ARGUMENT

Finally, Weibe argues that the State's closing argument impermissibly shifted the burden of proof to him. This argument fails.

Although in closing argument the State argued that Wiebe did not call the police or 911, the State *did not* say that Wiebe had the burden of proving he was not an accomplice. Instead, the State spoke to all of the requirements of accomplice liability and the elements of the crimes charged, as well as the facts that supported its burden to prove Wiebe was an accomplice. Wiebe argued his chosen defense that he was not an accomplice because he did not know what the other men planned to do or know what they eventually did. The jury was properly instructed that the State bore the burden of proving every element of every crime charged.

Thus, Wiebe does not show that the State's closing argument improperly shifted the burden of proof to him. This argument fails.

We affirm Wiebe's conviction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

I. CrR 3.5 HEARING

Detective Jared Stevens and Sergeant Duncan Hoss conducted a custodial interview of Wiebe. Wiebe waived his rights and voluntarily agreed to speak to the detectives. Wiebe answered questions about his name and date of birth. And he agreed to have the interview recorded. The recorded interview proceeded:

> JS: Okay, this is Detective Jared Stevens with the Clark County Sheriff's Office. It is December 19th, 2013. Its 1742 hours. Currently at the Clark County Sheriff's Office West Precinct. With me in the room are or yeah Detective Sergeant Duncan Hoss and Jarrod, is it Wiebe?
> JW: Wiebe.

Ex. 2 at 1.

After providing the spelling of his name and his date of birth, the interrogation continued.

> JS: Okay. And you have been advised of your rights, correct?
> JW: Yes.
> JS: And having those rights in mind you're still willing to talk to me, correct?
> JW: Yes sir.
> . . . .
> JS: Okay am I recording this with your permission?
> JW: Yes sir.
> JS: Okay. So stories have a beginning, a middle and an end. We learn that when we're all really young first learning how to read. Why don't you tell me the story about what, what happened today.
> *JW: I, I have nothing to say.*
> JS: You have nothin to say?
> DH: All right. Here's, here's the deal Jarrod, we are going to complete a report. You got that right? From your Theft III's and stuff, you know, we put down

8

> what happened. Well there's (inaudible) to be involved, right? We've talked to everybody else so we're gonna get their side of the story. All we're lookin for is your side of it. Now, you don't have to tell us, you know, you remember your rights, I can reread em if you want but I'm giving you the opportunity here cause this is the last chance you got to give your side of the story as to what happened. . . .
>
> . . . .
>
> JW: I didn't even know what was going on. We were just goin on a trip and I just volunteered to go.

Ex. 2 at 1-2 (emphasis added).

The court ruled that it was not clear to the court whether Wiebe's statement "'I have nothing to say'" was an unambiguous or unequivocal invocation of the right to remain silent, and so it likely was not clear to the officers interviewing Wiebe either. CP at 27. The court ruled that Wiebe's statements were admissible at trial.

## II. JURY SELECTION

During voir dire, the parties agreed to the trial court's suggestion that the parties conduct peremptory challenges by passing a clipboard. After peremptory challenges were completed, the jury panel was brought into the courtroom and the trial court empaneled the jury. There is nothing in the record to suggest the courtroom was closed during this time. The jury sheet shows four jurors were excused by peremptory challenges. This sheet was filed as part of the public record.

## ANALYSIS

### I. INVOCATION OF THE RIGHT TO REMAIN SILENT

Wiebe argues that the trial court erred when it ruled that his statement "'I have nothing to say'" was an ambiguous invocation of his right to remain silent and admitted his subsequent statements to police. Br. of Appellant at 26. We disagree.

9

Whether a defendant unequivocally invoked his right to remain silent is a mixed question of law and fact which we review de novo. *See State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004); *State v. Piatnitsky*, 180 Wn.2d 407, 411-413, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 590 (2015). To counteract the inherent compulsion of custodial interrogation, police must administer *Miranda*[1] warnings. *Miranda v. Arizona* requires that the defendant be warned prior to any questioning that he has the right to remain silent and that he has the right to an attorney. 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The standard for whether a defendant has invoked his *Miranda* rights to remain silent and to counsel is the same: invocation must be unambiguous, clear, and unequivocal. *Piatnitsky*, 180 Wn.2d at 413. If a defendant previously waived a *Miranda* right, a later invocation must also be unequivocal. *State v. Radcliffe*, 164 Wn.2d 900, 906, 194 P.3d 250 (2008) (holding a defendant must explicitly invoke the right to counsel after previously waiving the right). We evaluate whether an invocation was unequivocal using an objective test that asks whether a reasonable police officer in the circumstances would understand the statement to be an invocation of *Miranda* rights. *Piatnitsky*, 180 Wn.2d at 413. This test requires reviewing the plain language and the context of the purported invocation. *See Smith v. Illinois*, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984). We may not rely on context arising *after* the suspect's invocation to retroactively cast doubt on an unequivocal invocation of *Miranda* rights, but may consider events preceding the request or nuances inherent in the request itself. *See Smith*, 469 U.S. at 98-100.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

No. 47057-8-II

To show his statement was unequivocal, Wiebe argues that this case is analogous to *United States v. Bushyhead* and is distinguishable from *Piatnitsky*, but his arguments are unpersuasive. 270 F.3d 905 (9th Cir. 2001). In *Bushyhead*, the Court held that Bushyhead's statement, "'I have nothing to say'"—the same statement made by Wiebe—was an invocation of Bushyhead's right to silence. 270 F.3d at 912. But the Court first considered the context surrounding the statement. Following arrest, Bushyhead was restrained in the hospital and when he saw a Federal Bureau of Investigation special agent approaching him with a printed *Miranda* warning in hand, Bushyhead immediately said, "I have nothing to say, I'm going to get the death penalty anyway." *Bushyhead*, 270 F.3d at 908.[2]

Here, unlike in *Bushyhead*, Wiebe first unequivocally waived his rights and voluntarily agreed to speak to Detective Stevens and Sergeant Hoss. Wiebe answered questions about his name and date of birth. And he agreed to have the interview recorded. Because Wiebe initially agreed to speak with the police, his "I have nothing to say" comment is ambiguous and, therefore, *Bushyhead* is not applicable here.

Next, *Piatnitsky* does not support Wiebe's argument that his statement was unequivocal. After his arrest for a shooting, Piatnitsky was interviewed by police detectives, was advised of his rights, and then said, "I'm not ready to do this, man," and "I don't want to talk right now, man." *Piatnitsky*, 180 Wn.2d at 410. Piatnitsky also said, "I just write it down, man, I can't do this. I, I, I just write, man," and after the detectives confirmed he did not want to make an audio recorded

---

[2] Other cases also demonstrate that an invocation of the right to remain silent is unequivocal where the statement in question is the immediate response to an initial police question. *See State v. Gutierrez*, 50 Wn. App. 583, 589, 749 P.2d 213 (1988); *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 684, 327 P.3d 660 (2014); *State v. I.B.*, 187 Wn. App. 315, 317, 323, 348 P.3d 1250 (2015).

11

confession, Piatnitsky reviewed, made some changes to, and signed a corrected statement of confession. *Piatnitsky*, 180 Wn.2d at 410-11. While the court noted that "I don't want to talk right now, man," could be an unequivocal invocation, it held that the detectives reasonably concluded that Piatnitsky was expressing a preference for a written rather than an audio-recorded statement and any invocation of his *Miranda* rights was equivocal at best. *Piatnitsky*, 180 Wn.2d at 411, 413.

Here, Wiebe first waived his right to remain silent, agreed to speak to the detectives, and allowed the recording of his statements. And during the recorded portion of the interview, Wiebe again acknowledged that he had been read his *Miranda* rights, understood those rights, and agreed to talk with the detectives. In response to the first recorded question about the incident, Wiebe said, "I have nothing to say." 1 Report of Proceedings at 36. After Wiebe agreed, twice, to speak with the detectives, the detectives could reasonably conclude that Wiebe's statement was not an unequivocal invocation of his right to remain silent but simply an answer to their question to tell them about the incident. The trial court did not err in concluding that Wiebe did not unequivocally invoke his right to remain silent based on the context here.

## II. PEREMPTORY CHALLENGES

Finally, Wiebe argues that the court violated his public trial right by allowing the parties to pass a clipboard back and forth when conducting peremptory challenges. We disagree.

*State v. Love* controls our holding here. 183 Wn.2d 598, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524 (2016). Peremptory challenges are part of the jury selection process to which the right to a public trial extends. *Love*, 183 Wn.2d at 605. However, written peremptory challenges

No. 47057-8-II

are consistent with the public trial right so long as they are filed in the public record. *Love*, 183 Wn.2d at 607.

Here, the record reflects no physical closure of the courtroom to the public during the peremptory challenges and, following the passing of the clipboard, the court announced the names of the empaneled jury in open court. The jury sheet that listed the four peremptory challenged jurors was made part of the public record. Thus, there was no violation of Wiebe's public trial right.

We affirm.

JOHANSON, P.J.

We concur:

LEE, J.

SUTTON, J.

13