# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RANDALL C. SMITH,<br><br>Appellant. | No.  46365-2-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. — Randall Smith appeals his convictions for 23 charges relating to an identity theft operation and the sentence for his second degree identity theft convictions.  We hold that (1) the trial court did not err in denying Smith's motion to suppress physical evidence that police officers seized from the hotel rooms, (2) the trial court did not err in admitting Smith's post-arrest statements even though he said the word "attorney" when officers advised him of his *Miranda* rights, (3) the jury instructions on leading organized crime and accomplice liability were not erroneous, (4) Smith was not denied the right to a unanimous verdict on his leading organized crime conviction, and (5) Smith's assertions in his statement of additional grounds (SAG) have no merit.  However, we hold that Smith's sentences for the second degree identity theft convictions exceed the statutory maximum.  Thus, we affirm Smith's convictions but remand for the sentencing court to resentence Smith not to exceed the statutory maximum under RCW 9A.20.021 on the second degree identity theft convictions.

FACTS

Smith sold merchandise that he had purchased fraudulently using stolen identities and he hired several women to work for him as "associates." The women characterized Smith as their "boss," stating that he gave orders for the women to carry out. The women opened bank accounts, deposited fraudulent checks that Smith created into those accounts, and then withdrew as much money from the accounts as the bank would allow. They also cashed fraudulent payroll checks at "check cashing places" and gave the money to Smith. 6 Verbatim Report of Proceedings (VRP) at 492. Smith directed them to purchase specific items at certain stores with fraudulent checks and credit cards so that he could sell these items to third parties. The women went shopping "every day" and also participated in "scraping" credit cards of their numbers and demagnetizing them. 5 VRP at 398; 7 VRP at 600.

Bail agents David Chadwick and Joseph Kaufman had a contract to arrest Smith after he failed to appear in court in King County. The bail agents received information that Smith was staying at a hotel in Tacoma, confirmed the existence of the arrest warrant, and alerted the Tacoma Police Department as required under RCW 18.185.300(1)(a)-(b) that they were going to go to the hotel to arrest Smith. At the hotel, the staff confirmed that Smith was staying in the hotel, that he obtained hotel rooms with a stolen credit card, and that he registered for the rooms under a different name. The agents entered one of Smith's rooms with a key provided by the hotel and apprehended him inside the room.

Inside the room, the bail agents observed in plain view a large amount of credit cards, computers, and shopping bags. They did not search the items and called the Tacoma Police Department to investigate. Officer Jared Tiffany and two other officers responded. Upon arrival

at the hotel, Officer Tiffany spoke with Kaufman in the parking lot and Kaufman told him that they had received information earlier in the day that Smith was staying at the hotel, that Smith had an outstanding felony warrant for his arrest,[1] that Smith checked into the hotel with a fake driver's license, and that Kaufman had observed certain items in the room. When Officer Tiffany entered the room he saw "bins, computers, shopping bags, stacks of checks, mail, office supplies, and a box . . . that contained numerous credit cards." Clerk's Papers (CP) at 329. Officer Tiffany did not personally confirm the existence of the arrest warrant and he could not recall whether dispatch or someone else did.

When the bail agents entered the hotel room, a woman who worked with Smith was also present and she admitted that the merchandise in the room was stolen and that Smith would forge checks and have friends cash those checks. The officers removed Smith and the woman from the room and, after obtaining a search warrant, Officer Tiffany and the other officers searched the hotel room.

Officer Tiffany took custody of Smith and began reading him *Miranda*[2] warnings. Before he could finish, Smith blurted out the word, "Attorney." CP at 323. Officer Tiffany completed reading the *Miranda* warnings and asked Smith whether he wished to answer questions voluntarily; Smith answered, "Some questions." CP at 323. Smith refused to give Officer Tiffany his name, but answered subsequent questions regarding the hotel rooms and stated that the woman was his girlfriend. Smith stated that he and the woman had checked into the hotel earlier in the week,

---

[1] The complaint for a search warrant stated that Smith was reported to have two outstanding felony warrants for his arrest.

[2] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

rented five rooms, and allowed several of his friends to stay in the other rooms. Smith later initiated a conversation with another officer and made statements about two vehicles that were being impounded pending a search warrant, insisting that they were his.

Officers obtained a search warrant for the hotel rooms and recovered numerous credit cards both new and altered, credit card numbers, a credit card embosser, voided, blank, and Versa checks,[3] financial documents, social security numbers, birth and death certificates, blank W-2 forms, altered treasury bonds and applications for various payment instruments. The officers also recovered a firearm in one of the hotel rooms.

The State charged Smith with 18 counts of second degree identity theft, and one count each of first degree identity theft, unlawful possession of a firearm, unlawful possession of a personal identification device, unlawful possession of payment instruments, and leading organized crime.[4] The trial court denied Smith's motions to suppress the evidence found in the hotel rooms and his post-arrest statements. The trial court dismissed the State's charge of first degree identity theft after the State rested its case-in-chief. The jury found Smith guilty on all other charges except for the unlawful possession of a firearm charge. Smith appeals his convictions and his sentences for second degree identity theft.

---

[3] A Versa check is a blank check onto which a person can print identifying information, including the account and routing number from the bank. 4 VRP at 221-222.

[4] The State also charged Smith with one count of unlawful possession of a stolen vehicle and alleged that he was armed with a firearm during the unlawful possession of a personal identification device and leading organized crime, but the jury did not find Smith guilty of that charge nor did they find that he was armed.

ANALYSIS

I. MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

We review a trial court's rulings on a motion to suppress to determine whether substantial evidence supports the trial court's findings of fact and whether the findings of fact support the trial court's conclusions of law, which we review de novo. *State v. Russell*, 180 Wn.2d 860, 866-67, 330 P.3d 151 (2014). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise. *Russell*, 180 Wn.2d at 866-67. Unchallenged findings of fact are verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We review a conclusion of law that is mislabeled a finding of fact as a conclusion of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

A. THE HOTEL ROOM SEARCH

Smith argues that the trial court erred in denying his motion to suppress because the officers failed to confirm the validity of the arrest warrant prior to entry into the hotel room, they lacked probable cause.[5] We hold that the entry was lawful and thus, the officers' search warrant subsequently obtained based on their plain view observations was also lawful.

---

[5] The State argues that Smith lacks standing to challenge the search, but we disagree. To have automatic standing, the defendant must meet a two-part test: (1) possession is an essential element of the offense of which he or she is charged and (2) he or she was in possession of the contraband at the time of the contested search or seizure. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007). Smith meets these two elements, as unlawful possession of a firearm, unlawful possession of a personal identification device, and unlawful possession of payment instruments include an element of possession, and officers found those items in the hotel rooms with Smith. Further, a defendant does not lose automatic standing to challenge a search when he "'could not *technically* have a privacy interest in such property.'" *Evans*, 159 Wn.2d at 406-07 (emphasis added) (quoting *State v. Simpson*, 95 Wn.2d 170, 175, 622 P.2d 1199 (1980) (defendant did not lack standing to object to search of a briefcase that he claimed belonged to another person).

The United States and Washington Constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. In order to lawfully enter a dwelling to serve an arrest warrant, an officer must have probable cause to believe that the person to be arrested resides in the dwelling and is inside the dwelling at the time of entry. *State v. Hatchie*, 133 Wn. App. 100, 113-114, 135 P.3d 519 (2006).

Smith does not dispute that a valid warrant for his arrest actually existed. Instead, he argues that the police officers lacked probable cause to enter the hotel room based on the bail agents' representation that an arrest warrant existed for Smith because the bail agents were not reliable informants under the *Aguliar/Spinelli*[6] test, and the officers did not confirm the validity of the arrest warrants. We disagree and hold that the bail agents were reliable citizen informants under *Agular/Spinelli*, that the police officers had probable cause to enter the hotel room, and that the evidence obtained within the hotel rooms was admissible.

Washington applies the *Aguilar/Spinelli* test to determine whether information provided by an informant establishes probable cause to issue a search warrant and requires that the informant have a basis of knowledge and be reliable. *State v. Bauer*, 98 Wn. App. 870, 874–75, 991 P.2d 668 (2000) (citing *State v. Jackson*, 102 Wn.2d 432, 436–37, 440, 688 P.2d 136 (1984)). Both prongs of the *Aguilar/Spinelli* test must be satisfied to establish probable cause. *Bauer*, 98 Wn. App. at 875 (citing *State v. Smith*, 110 Wn.2d 658, 664, 756 P.2d 722 (1988)). If an informant's tip fails under either prong, there is a lack of probable cause unless independent police

---

[6] *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 415–16, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Both *Aguilar* and *Spinelli* were abrogated by *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), but adhered to by *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

investigation corroborates the tip to such an extent that it supports the missing elements of the test. *Bauer*, 98 Wn. App. at 875 (citing *Jackson*, 102 Wn.2d at 438).

The knowledge prong is satisfied if the informant has personal knowledge of the asserted facts. *Bauer*, 98 Wn. App. at 875 (citing *Jackson*, 102 Wn.2d at 437–38). To establish the reliability of a citizen informant, the police must "'interview the informant and ascertain such background facts as would support a reasonable inference that he is prudent or credible, and without motive to falsify.'" *Bauer*, 98 Wn. App. at 876 (internal quotation marks omitted) (quoting *State v. Chatmon*, 9 Wn. App. 741, 748, 515 P.2d 530 (1973)).

Kaufman had personal knowledge that there was a valid arrest warrant and that Smith was in the hotel room. Additionally, Officer Tiffany spoke with Kaufman in the parking lot and obtained information that Kaufman had a contract to arrest Smith after his failure to appear, that he had received information that Smith was staying in the hotel, and that he had an outstanding felony warrant. This information together with Kaufman's credentials as a bail agent are sufficient to establish that he was credible and did not have reason to falsify the information.[7]

Smith argues that the trial court's conclusion of law II is not supported by substantial evidence. The trial court stated as follows:

> That the Court finds that the officers lawfully entered [the] hotel room []
> that [Smith] had fraudulently rented. The officers spoke with the reporting party,
> one of the bail bond recovery agents, prior to entering the room. [Smith] was
> already under arrest when the officers entered the room. The valid arrest warrant
> for [Smith] provided [the officers] with an independent basis to enter the hotel

---

[7] Smith acknowledges that bail agents may effectuate "surrender" of a person on a bail bond per statute. Under RCW 18.185.300, before a bail agent may apprehend a person subject to a bail bond in a planned forced entry, the bail agent must have "reasonable cause" to believe that the defendant is inside the dwelling and "notify an appropriate law enforcement agency in the local jurisdiction in which the apprehension is expected to occur."

room. The officers were not required to independently confirm the warrant prior to entering the hotel room.

CP at 331. To the extent that this conclusion of law was mislabeled because it is a finding of fact, it is supported by substantial evidence. The bail agents who apprehended Smith testified that they had a contract with the bonding company to arrest Smith. They received information on Smith's location and confirmed the existence of the arrest warrant for Smith's failure to appear. The agents called the Tacoma Police Department to alert them that they would be serving the warrant at the hotel.

To the extent that conclusion of law II is a conclusion of law, the unchallenged findings of fact support it. The bail agents followed the procedures under RCW 18.185.300 for entering the hotel where they had information Smith was residing, including confirming the warrant and alerting the Tacoma Police Department. The agents apprehended Smith inside the room. The trial court did not err in concluding that the entry was lawful.

Smith does not cite any Washington authority that requires law enforcement to independently confirm the existence of an arrest warrant when bail agents have done so and then convey that information to the police following statutory procedure. Although Smith is correct that the bail agents are merely private citizens, not police officers, RCW 10.19.160 confers limited authority on a bail agent to conduct apprehensions on arrest warrants for failure to appear. Smith does not disagree that the bail agents had the authority to apprehend him or that they told the officers about the arrest warrant. The fact that the trial court incorrectly stated that Smith was "arrested" by the bail agents in the hotel room when only police officers may "arrest" a person

does not negate the validity of the trial court's conclusion that the officers lawfully entered the hotel room to take custody of Smith after the bail agents apprehended him.

Therefore, because the officers were lawfully in the hotel room when they observed evidence of a crime in plain view, the search warrant obtained to search the rooms based on those observations was proper and the evidence obtained as a result of that warrant was admissible. *State v. Martines*, 184 Wn.2d 83, 90, 355 P.3d 1111 (2015) (valid search warrant requires affidavit showing probable cause, which exists when facts and circumstances are sufficient to establish a reasonable inference that a person is involved in criminal activity and evidence of that criminal activity can be found at the place to be searched). The trial court properly denied Smith's motion to suppress the physical evidence found in the hotel rooms.

B. SMITH'S POST-*MIRANDA* STATEMENTS

Smith next argues that the trial court erred in denying his motion to suppress his post-arrest statements because Officer Tiffany did not cease his questioning when Smith said, "Attorney," indicating he wished to speak with an attorney. 2 VRP at 75-76. We hold that because Smith affirmatively agreed that he would answer "some" questions, he did not unambiguously invoke his right to an attorney and his post-*Miranda* statements were admissible. 2 VRP at 70.

The United States and Washington Constitutions guarantee the right against self-incrimination. U.S. CONST. amend. V; WASH. CONST. art. 1, § 9; *State v. Unga*, 165 Wn.2d 95, 100, 196 P.3d 645 (2008). Before a suspect is subjected to custodial interrogation, a police officer must inform the person that he or she has the right to remain silent, that anything he or she says may be used in future prosecution, that he or she has the right to have an attorney present during questioning, and if the person cannot afford an attorney, one will be provided before questioning.

*State v. Piatnitsky*, 180 Wn.2d 407, 412, 325 P.3d 167 (2014). A suspect's waiver of these rights must be knowing, voluntary, and intelligent, and the State bears the burden to prove voluntariness by a preponderance of the evidence. *Piatnitsky*, 180 Wn.2d at 412; *State v. DeLeon*, 185 Wn. App. 171, 200, 341 P.3d 315 (2014).

If a suspect waives his or her *Miranda* rights, a suspect may ask for an attorney at any time. *State v. Radcliffe*, 164 Wn.2d 900, 906, 194 P.3d 250 (2008). If the suspect requests an attorney, all questioning must stop until he has an attorney or starts talking again on his own. *Radcliffe*, 164 Wn.2d at 906. To successfully invoke the right to counsel, a suspect must do so "'unambiguously.'" *State v. Nysta*, 168 Wn. App. 30, 41, 275 P.3d 1162, 1168 (2012) (quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). However, this invocation must be unambiguous; it "'must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'" *Nysta*, 168 Wn. App. at 41 (quoting *Davis*, 512 U.S. at 461). A statement is either an assertion of ones right to a lawyer or it is not—"[t]his is a bright-line inquiry." *Piatnitsky*, 180 Wn.2d at 413. Our inquiry is an objective one. *Piatnitsky*, 180 Wn.2d at 413.

First, Officer Tiffany had not yet begun to question Smith when he "blurted out the word, 'Attorney.'" CP at 323. Thus, there was not yet any questioning that Officer Tiffany was required to cease at that point. After Officer Tiffany completed giving Smith his *Miranda* warning, Smith did not object to answering questions or assert that he wished to speak with an attorney. In fact, Smith affirmatively agreed that he would answer "some" questions following Officer Tiffany's complete reading of the *Miranda* warning. CP at 323. Thus, Smith did not unambiguously invoke

his right to an attorney that would have required Officer Tiffany to cease questioning. Therefore, the trial court did not err in concluding that Smith's post-*Miranda* warning statements were admissible.

## II. THE JURY INSTRUCTIONS

Smith argues that the trial court's jury instructions on second degree identity theft, leading organized crime, and accomplice liability were erroneous. Because Smith did not challenge the jury instructions on second degree identity theft at trial, we decline to review this issue. As to the jury instructions on leading organized crime and accomplice liability, we hold that the jury was properly instructed.

We review legal sufficiency of jury instructions de novo. *State v. Walker*, 182 Wn.2d 463, 481, 341 P.3d 976 (2015), *cert. denied*, 135 S. Ct. 2844 (2015). Jury instructions are insufficient if they relieve the State of its burden to prove every essential element of the charged crime. *Walker*, 182 Wn.2d at 481. Jury instructions are sufficient when they allow each party to argue its theory of the case, are not misleading, and properly inform the trier of fact of the applicable law when read as a whole. *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010).

### A. SECOND DEGREE IDENTITY THEFT

On appeal, Smith challenges the trial court's instruction on second degree identity theft. However, he did not object to this instruction at trial.

Under RAP 2.5(a) an error may not be raised for the first time on appeal unless the appellant demonstrates that (1) the error is manifest and (2) the error is truly of constitutional dimension. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756, 760 (2009). Instructional errors affecting a defendant's constitutional rights are manifest constitutional errors. *O'Hara*, 167 Wn.2d at 103.

Instructional errors not falling within the scope of RAP 2.5(a) include the failure to define individual terms. *O'Hara*, 167 Wn.2d at 103. Even where constitutional rights are involved, we are precluded from reviewing jury instructions when the defendant agreed to their wording. *State v. Winings*, 126 Wn. App. 75, 89, 107 P.3d 141 (2005).

Smith's challenge to the second degree identity theft instruction is based upon the specific wording of the instruction, which he did not challenge in the trial court. Therefore we decline to address this issue for the first time on appeal.

B. LEADING ORGANIZED CRIME AND ACCOMPLICE LIABILITY

As to the jury instructions on leading organized crime and accomplice liability, Smith argues that the jury instruction did not clarify that the jury could not convict him for leading organized crime on a theory of accomplice liability and cites *State v. Teal*, 152 Wn.2d 333, 338-39, 96 P.3d 974 (2004).

A person commits the crime of leading organized crime when he or she intentionally organizes, manages, directs, supervises, or finances any three or more persons with the intent to engage in a pattern of criminal profiteering activity. RCW 9A.82.060(1)(a). A defendant may not be convicted of leading organized crime as an accomplice. *State v. Hayes*, 164 Wn. App. 459, 470, 262 P.3d 538 (2011). The trial court's jury instruction on leading organized crime provided as follows:

> To convict the defendant of the crime of leading organized crime as charged, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about the period between September 29, 2012 and November 25, 2012 *the defendant* intentionally organized, managed, directed, supervised or financed three or more persons;

(2) That *the defendant* acted with the intent to engage in a pattern of criminal profiteering activity; and

(3) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 250 (emphasis added).

Smith fails to identify any error in this jury instruction. There is no dispute that the trial court's to-convict jury instruction on leading organized crime correctly stated the elements the jury must find beyond a reasonable doubt. There also is no dispute that the trial court's accomplice liability jury instruction accurately stated the law. Further, Smith did not request a jury instruction clarifying accomplice liability as applied to leading organized crime. Smith does not cite any authority that the trial court's failure to *sua sponte* additionally instruct the jury on this issue is error.

Additionally, the State's closing argument eliminated any possible confusion. The State emphasized that the jury could not find Smith guilty of leading organized crime as an accomplice because he was "either the leader or he [was] not." 9 VRP at 761.

*Teal* does not affect our analysis. In *Teal*, our Supreme Court held that the jury could have found the defendant guilty as an accomplice to first degree robbery, even though the to-convict instruction did not include accomplice language, because the trial court also instructed the jury on accomplice liability. 152 Wn.2d at 339. But that case did not involve whether it is error to give a leading organized crime instruction and a general accomplice liability instruction without clarifying that there can be no accomplice liability for leading organized crime.

13

Thus, because the instruction did not relieve the State of its burden to prove every essential element of leading organized crime, allowed each party to argue its theory of the case, was not misleading, and properly informed the jury of the applicable law when read as a whole with the other instructions, the jury instructions on leading organized crime and accomplice liability were not erroneous.

### III. RIGHT TO UNANIMOUS VERDICT ON LEADING ORGANIZED CRIME

Smith argues that he was denied the right to a unanimous verdict on the leading organized crime conviction because the State presented several acts that could have supported it, but the trial court did not instruct the jury that it must unanimously agree on those acts. We hold that the trial court properly instructed the jury that their verdict must be unanimous to find the defendant guilty of criminal profiteering.

To prove the offense of leading organized crime, the State must prove that the defendant intentionally organized, managed, directed, supervised, or financed any three or more persons with the intent to engage in a pattern of criminal profiteering activity. RCW 9A.82.060(1)(a). The trial court's jury instruction defined criminal profiteering activity as "at least three acts" that were "committed for financial gain," "constituted the crime of forgery or identity theft," and "had the same or similar intent, results, accomplices, principals, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics." CP at 249. This jury instruction correctly stated the statutory definition of criminal profiteering under RCW 9A.82.010(12).[8] The trial court also instructed the jury that its verdict must be unanimous.

---

[8] RCW 9A.82.010(12) states that criminal profiteering activity is:

14

By the plain meaning of RCW 9A.82.060, the jury was required to find that Smith "intentionally organized . . . *any* three or more persons." Thus, the jury need not have agreed on the individuals so long as each juror agreed that *any three* persons were involved. Likewise, the jury instruction defining criminal profiteering as "three acts" committed for financial gain does not produce a criminal act that is divisible into individual violations of the crime requiring an additional unanimity instruction. The "three acts" requirement is provided by the definitional section of the statute. Definition sections do not "add to the criminal statute." *State v. Strohm*, 75 Wn. App. 301, 309, 879 P.2d 962 (1994). For a conviction for leading organized crime, the definition statute "sets out the different ways the crime can be committed." *State v. Munson*, 120 Wn. App. 103, 107, 83 P.3d 1057 (2004) (citing RCW 9A.82.060).

There is no requirement in RCW 9A.82.060 that the same three persons be involved in the same three crimes. Accordingly, we hold that Smith was not denied the right to a unanimous verdict on the leading organized crime conviction.

IV. SMITH'S SENTENCE FOR SECOND DEGREE IDENTITY THEFT

Smith argues that the trial court imposed a sentence that exceeded the statutory maximum for second degree identity theft. The State concedes this error. We agree and remand for the

---

[E]ngaging in at least three acts of criminal profiteering . . . . In order to constitute a pattern, the three acts must have the same or similar intent, results, accomplices, principals, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics including a nexus to the same enterprise, and must not be isolated events.

15

sentencing court to resentence Smith not to exceed the statutory maximum under RCW 9A.20.021[9] on the second degree identity theft convictions.

A trial court may not impose a sentence of confinement and community custody that, when combined, exceeds the statutory maximum for the offense. *State v. Boyd*, 174 Wn.2d 470, 472, 275 P.3d 321 (2012). Remand is required when a total sentence of confinement and community custody exceeds the statutory maximum. *Boyd*, 174 Wn.2d at 473. A conviction for second degree identity theft, a class C felony, carries a statutory maximum sentence of five years. RCW 9.35.020(3), 9A.20.021(c).

The trial court sentenced Smith to 57 months of confinement and 12 months of community custody for each conviction of second degree identity theft. This sentence exceeds the statutory maximum for the offense by nine months. Thus, we remand for the sentencing court to resentence Smith not to exceed the statutory maximum under RCW 9A.20.021on the second degree identify theft convictions.

V. STATEMENT OF ADDITIONAL GROUNDS (SAG)

A. PRIOR NOTIFICATION OF REVOCATION OF RIGHT TO POSSESS FIREARM

Smith argues that his conviction for unlawful possession of a firearm must be reversed because the record does not contain proof that he was notified that he could not possess a firearm after a previous conviction. When the State sought a stipulation regarding his predicate offense, Smith raised the issue of whether he was notified that he could not possess a firearm but later

---

[9] Under RCW 9A.20.021(c), the maximum sentence for a class C felony is confinement in a state correctional institution for five years, or by a fine in an amount fixed by the court of ten thousand dollars, or by both such confinement and fine.

agreed to the stipulation and the trial court presented it to the jury.[10] Thus, because Smith agreed to the stipulation, he fails to establish that he was not properly notified that he could not possess a firearm.

B. SUFFICIENCY OF THE EVIDENCE

Smith next argues that the State presented insufficient evidence for the jury to find him guilty of leading organized crime, all 18 counts of second degree identity theft, unlawful possession of a personal identification device, and unlawful possession of payment instruments.

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d at 105. In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106.

1. Leading Organized Crime

Smith argues that the State presented insufficient evidence of the criminal profiteering element of leading organized crime. We disagree.

---

[10] The stipulation read that "beyond a reasonable doubt [Smith] has previously been convicted of a serious felony offense." 8 VRP at 717.

A person commits the offense of leading organized crime when he or she intentionally organizes, manages, directs, supervises, or finances any three persons "with the intent to engage in a pattern of criminal profiteering[11] activity." RCW 9A.82.060(1)(a).

At least three women testified that Smith was the "boss," the "head of the household," or was "in charge" of the operation. 5 VRP 395, 402, 419; 6 VRP at 499; 7 VRP at 622; 8 VRP at 695. They further testified that Smith would give them shopping lists to buy items and that Smith would sell them to third parties. They went shopping "every day" and used checks that Smith gave them. 7 VRP at 600-01. In the hotel room, officers found identifications from people who did not give Smith permission to have them.

Taken in the light most favorable to the State, we hold that a rational trier of fact could have found that Smith organized three people with the intent to commit identity theft on at least three occasions.

2. Other Convictions – Intent and Possession Elements

Smith argues that his convictions for second degree identity theft, unlawful possession of a personal identification device, and unlawful possession of payment instruments must be reversed because the State failed to prove the intent and possession elements of the crimes. We disagree.

A person commits second degree identity theft by knowingly obtaining, possessing, using, or transferring identification or financial information of another person with the intent to commit or aid any crime. RCW 9.35.020(1). Likewise, the crimes of unlawful possession of a personal identification device and unlawful possession of payment instruments also require the State to

---

[11] "Criminal profiteering" is defined as any act, including any anticipatory or completed offense, committed for financial gain. RCW 9A.82.010(4).

prove that the person possessed the device or payment instrument with the intent to use the device or payment instrument to deprive another person of the payment instrument or to commit theft, forgery, or identity theft.[12]  RCW 9A.56.320(2)-(3).

Intent to commit a crime may be inferred "'if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).  For crimes that require proof of both possession and intent, mere possession does not permit an inference of intent.  *Vasquez*, 178 Wn.2d at 8, 12 (in forgery cases where the State proved intent to defraud, the defendants "actually demonstrated intent to pass off their forged documents as authentic").

The officers recovered numerous devices and papers related to identity theft—credit cards and credit card numbers, Versa checks, social security numbers, a credit card embosser, printers, and applications for credit cards from the hotel room in which Smith was arrested.  As explained above, the women testified as to how the operation worked and Smith's role in giving them checks, telling them what to buy, and then selling those items.  This testimony distinguishes this case from *Vasquez*, where "'unexplained possession'" of a forged instrument did not constitute sufficient

---

[12] RCW 9A.56.320(2)-(3) provides in relevant part, "A person is guilty of unlawful possession of payment instruments if he or she possesses two or more checks or other payment instruments . . . [i]n the name of a person or entity [or a fictitious person or entity] . . . without the permission of the person or entity to possess such payment instrument, and with intent either to deprive the person of possession of such payment instrument or to commit theft, forgery, or identity theft . . . . A person is guilty of unlawful possession of a personal identification device if the person possesses a personal identification device with intent to use such device to commit theft, forgery, or identity theft."

evidence of intent. *Vasquez*, 178 Wn.2d at 13 (quoting *State v. Vasquez*, 166 Wn. App. 50, 53, 269 P.3d 370 (2012), *reversed* by 178 Wn.2d 1).

Therefore, we hold that a rational trier of fact could have concluded that the State proved beyond a reasonable doubt Smith's possession and intent to use the identities, personal identification device, and payment instrument for the purpose of identity theft or forgery.

C. CONFRONTATION CLAUSE

Smith argues that his right to confront witnesses was violated because several victims named in the charges for second degree identity theft did not testify. We disagree.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Under the confrontation clause, out-of-court testimonial statements by witnesses are barred unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the witnesses. *Crawford v. Wash.*, 541 U.S. 36, 54-56, 124 S. Ct. 1354. 158 L. Ed. 2d 177 (2004). We review alleged violations of the Sixth Amendment's confrontation clause de novo. *State v. O' Cain,* 169 Wn. App. 228, 234 n. 4, 279 P.3d 926 (2012).

This claim fails because Smith does not and cannot identify any testimonial statements relayed by other witnesses through these named victims. The fact that these victims did not testify does not trigger any confrontation clause violations.

D. JUDICIAL BIAS

Smith argues that the trial court was biased against him, requiring reversal. We disagree.

We presume that the trial court discharges its duties without bias or prejudice against a party. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). To overcome that presumption, a party must provide "specific facts establishing bias." *Davis*, 152 Wn.2d at 692. "Judicial rulings alone almost never constitute a valid showing of bias." *Davis*, 152 Wn.2d at 692.

Smith fails to raise any specific facts that demonstrate the trial court was biased against him and recites only procedural facts wherein the trial court ruled against his motions or did not do as he wished. These facts do not establish actual bias or apparent bias.

E. INEFFECTIVE ASSISTANCE OF COUNSEL

Smith argues that his trial counsel was ineffective in five ways: (1) failing to bring a motion to suppress under our state constitution, (2) not addressing automatic standing on the motion to suppress, (3) failing to object to Smith's convictions for counts pertaining to witnesses who did not testify, (4) failing to argue that the State did not prove the charged elements of the crime beyond a reasonable doubt, and (5) not understanding identity theft statutes by arguing that a business is not a person, resulting in an additional jury instruction.[13] We disagree.

---

[13] Smith also argues that his counsel was ineffective by bringing arguments not supported by authorities and that defense counsel was unprepared in arguments and lacked knowledge in the areas of law for which Smith was charged. Smith does not identify the nature and occurrence of these alleged errors. RAP 10.10(c). Thus, these assertions of error are too vague to allow us to identify them and we decline to reach them.

Under the United States and Washington Constitutions, a criminal defendant has the right to effective assistance of counsel. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). To prevail on a claim that trial counsel was ineffective, the defendant has the burden to establish (1) that counsel's representation was deficient by falling below an objective standard of reasonableness and (2) a reasonable probability that the result of the proceeding would have been different if counsel had been effective. *Jones*, 183 Wn.2d at 339.

Our review of an attorney's performance is "highly deferential." *State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014). If trial counsel's conduct may be considered a legitimate trial tactic, his or her performance is not deficient. *Humphries*, 181 Wn.2d at 720. To overcome our presumption that trial counsel's performance is reasonable, a defendant bears the burden to establish the absence of a legitimate trial tactic that explains trial counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014). We review the reasonableness of counsel's performance by considering all the circumstances surrounding counsel's trial decisions. *Hamilton*, 179 Wn. App. at 879.

First, while defense counsel did not submit a written motion to suppress evidence, Smith did, and defense counsel submitted a memorandum in support of Smith's motion. Defense counsel argued extensively at the suppression hearing that the search of the hotel rooms was not lawful and the trial court relied on article I, section 7 of the state constitution in its analysis. Thus, defense counsel was not deficient for failing to make a separate motion to suppress and Smith cannot demonstrate that he was prejudiced by that decision.

Second, defense counsel did not specifically address standing during his motion to suppress oral argument, but the trial court ultimately disagreed with the State's argument that Smith lacked standing. Assuming without deciding that defense counsel's performance was deficient, Smith cannot show prejudice.

Third, as explained above, there was no error when witnesses named in Smith's charges did not testify at trial but the detective testified that she identified their information in Smith's possession and verified that they were real people. Again, assuming without deciding that defense counsel's performance was deficient, Smith cannot show prejudice.

Fourth, Smith is incorrect that defense counsel did not argue that the State failed to prove every element of the charged crimes beyond a reasonable doubt. Defense counsel successfully moved to dismiss one count after the State rested its case-in-chief and unsuccessfully moved to dismiss two other counts. During closing argument, defense counsel discussed the standard of proof and argued extensively that the State had failed to meet it. Thus, Smith fails to demonstrate defense counsel's deficient performance.

Fifth, Smith does not demonstrate how he was prejudiced when the trial court gave the jury an additional instruction following defense counsel's closing argument. Following defense counsel's closing argument, the trial court instructed the jury that the term "person" in the jury instructions, related to identity theft means, "any natural person and, where relevant, a corporation, joint stock association, or an unincorporated association." 9 VRP at 801. Smith did not object to this additional instruction and he cannot demonstrate that he was prejudiced. Thus, Smith's claim that his defense counsel was ineffective fails.

No. 46365-2-II

## CONCLUSION

We affirm Smith's convictions but remand for the sentencing court to resentence Smith not to exceed the statutory maximum under RCW 9A.20.02 on the second degree identity theft convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.