IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34094-5-III |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROGELIO NUNEZ, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — We granted the State of Washington's motion for discretionary review of the trial court's order suppressing Rogelio Nunez's confessions to multiple crimes. The trial court determined that Mr. Nunez was not properly advised of his *Miranda*[1] warnings, and that his confessions occurred while in custody.

The State argues the trial court erred by refusing to reopen testimony in a CrR 3.5 hearing after closing comments began but before the trial court issued its oral ruling. We conclude the trial court did not abuse its discretion when it refused to reopen testimony.

The State also argues the trial court erred by determining that Mr. Nunez was in

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

custody when he confessed to several crimes. We conclude that Mr. Nunez was not in custody until after he confessed to the first crime. For this reason, only those statements he made after his first confession should be suppressed. We therefore affirm in part, and reverse in part, the trial court's suppression order.

## FACTS

The State charged Mr. Nunez with four counts of child molestation. The facts set forth below arise out of a CrR 3.5 hearing, where only two law enforcement officers testified.

On the morning of September 15, 2015, Detective Jacinto Nunez met with Mr. Nunez at his home to investigate allegations that Mr. Nunez had molested two young girls. Mr. Nunez said he was willing to speak with the detective, but preferred to work that day and then speak with the detective at the sheriff's office. Detective Nunez agreed to this. Mr. Nunez also said he preferred to discuss the topic in Spanish, his preferred language.

Detective Nunez then arranged to have Deputy Ruben Bayona present during the interview to help build rapport because Deputy Bayona had more experience with child sex cases and spoke better Spanish.

As promised, Mr. Nunez came to the sheriff's office after he finished work that day. One or both officers confirmed that Mr. Nunez drove himself to the sheriff's office, was not handcuffed before or during the interview, was not under arrest, and was free to leave whenever he wished.

The first part of the interview was not recorded because the officers were building rapport with Mr. Nunez. After about 10 minutes, Detective Nunez advised Mr. Nunez of his rights in Spanish by reading from a Spanish advisement of rights form. The form listed the rights numerically, in paragraphs one through five. Detective Nunez testified he read to Mr. Nunez the rights in paragraphs one, three, four, and five. He explained that the right in paragraph two was for juveniles only, and when Mr. Nunez answered he was 47 years old, he skipped that right. The first sentence in paragraph two contains the familiar warning that anything you say can be used against you in a court of law.[2]

Mr. Nunez initialed the form twice, once to confirm that the above rights were read to him and that he understood them, and once to waive his rights. Within two or three minutes, Mr. Nunez confessed. He first confessed to groping J.A over her clothes when

---

[2] On the form, Detective Nunez crossed out only the second sentence of paragraph two. This created an issue of fact whether Detective Nunez read Mr. Nunez the familiar warning contained in the first sentence of that paragraph. Because the trial court found that the detective did not read that sentence to Mr. Nunez, and this finding is supported by substantial evidence, we present the facts in this manner.

she was a young girl. He then confessed to groping D.N. when she was young and having

intercourse with her when she was older.

During cross-examination of Detective Nunez, Mr. Nunez asked whether the

purpose of the interview was to coerce a confession. Detective Nunez answered, "Yes."

Clerk's Papers (CP) at 51. Despite this answer, the testimony from one or both officers

was that the interview was focused on building rapport, Mr. Nunez was "pretty cheerful,"

and Mr. Nunez's confession was almost immediate after he was advised of his rights. CP

at 30.

Both sides gave brief closing arguments at the conclusion of the hearing. The

State expressed surprise when Mr. Nunez argued the detective failed to advise him of one

of his warnings, and the detective agreed the purpose of the interview was to coerce a

confession. The State offered to recall Detective Nunez to clarify those issues, but the

trial court exercised its discretion and ruled that the testimony was closed.

The trial court found that Mr. Nunez was not adequately advised of his warnings

and that the purpose of the interview was to coerce a confession.[3] Based on these

findings, the trial court ruled that Mr. Nunez's confession must be suppressed.

---

[3] The detective's unexpressed purpose is of no relevance. *See State v. Solomon*, 114 Wn. App. 781, 790, 60 P.3d 1215 (2002) (An officer's unexpressed intentions are irrelevant to the question of whether the suspect was in custody.).

4

The State brought a motion for reconsideration. In its motion, the State attached a sworn statement from Detective Nunez. Among other arguments, the State argued that only custodial statements are subject to suppression under *Miranda*, and the evidence established as a matter of law that Mr. Nunez was not in custody. The trial court declined to consider the additional evidence, considered the State's custody argument, and found that because the confession was obtained in an interrogation room at the sheriff's office, Mr. Nunez's statement was custodial.[4] The trial court denied reconsideration of its earlier CrR 3.5 ruling. The State moved for discretionary review, and we granted the State's motion.

## LAW AND ANALYSIS

A.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT REFUSED TO REOPEN THE TESTIMONY

A trial court has discretion to decline to reopen a hearing, and reversal is warranted only on a showing of an abuse of discretion. *Estes v. Hopp*, 73 Wn.2d 263, 270, 483 P.2d 205 (1968). Discretion is abused when it is exercised on untenable grounds for untenable reasons. *State v. Sanchez*, 60 Wn. App. 687, 696, 806 P.2d 782 (1991). "Consideration

---

[4] Mr. Nunez argues that the State's failure to raise the argument that he was not in custody is a waiver of that argument. But the State made this argument in its reconsideration motion. Because the State made this argument and the trial court ruled on it, the State did not waive its argument that Mr. Nunez was not in custody.

5

should be given to whether the law on point at the time was unclear or ambiguous, as well as to whether new evidence came to light after the proceedings closed." *United States v. Coward*, 296 F.3d 176, 182 (3rd Cir. 2002).

Here, the law on the admissibility of confessions is clear, and the State did not have any new evidence that came to light after the hearing. The trial court explained its basis for refusing the State's request to reopen: "If we don't have finality, then the meaning of the hearing is that we continue to conduct it until the State wins. That's not the purpose of the hearing." Report of Proceedings (RP) at 15.

The State argues the trial court improperly applied the "finality principle" when it refused to reopen, and because this legal principle was improperly applied, our review is de novo. Appellant's Br. at 12. The State does not explain what this "finality principle" is, but cites cases to the effect that collateral estoppel and res judicata are inapplicable until a final judgment is entered. We reject the State's argument because the trial court's reasoning had nothing to do with the doctrines of res judicata or collateral estoppel.

The State also argues it was denied due process because it did not know that Mr. Nunez would argue that his advisement of rights was deficient or that his confession was coerced. We reject this argument because *neither* party could have anticipated these arguments until Detective Nunez testified to these points. The State was not denied due

6

process. Had it listened to Mr. Nunez's questions and its own witness's answers, it could have rectified these issues on redirect.

We conclude the trial court gave tenable reasons for not allowing the State to reopen. We find no abuse of discretion.

B.   MR. NUNEZ WAS NOT IN CUSTODY UNTIL AFTER HE CONFESSED TO THE FIRST CRIME

1.   *Standard of review*

When we review an order granting or denying suppression under CrR 3.5, we determine "whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is sufficient "'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Unchallenged findings of fact are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). This court reviews the trial court's conclusions of law from a suppression hearing de novo. *State v. Campbell*, 166 Wn. App. 464, 469, 272 P.3d 859 (2011).

2.   *Custody, for* Miranda *purposes, is determined by considering the totality of the circumstances, and asking whether a reasonable person in the suspect's position would feel that his or her freedom is curtailed to the degree associated with a formal arrest*

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." To counteract the inherent compulsion of custodial interrogation, police must administer *Miranda* warnings. *State v. I.B.*, 187 Wn. App. 315, 320, 348 P.3d 1250 (2015). *Miranda* requires that the defendant "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 479. Police must give *Miranda* warnings when a suspect is subject to (1) custodial (2) interrogation (3) by an agent of the state. *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). Without *Miranda* warnings, this court presumes a suspect's statements during custodial interrogation are involuntary and are therefore inadmissible. *Id.*

The sole issue here is custody. With respect to custody, the facts support the trial court's finding that Mr. Nunez gave his confessions in an interrogation room at the sheriff's office. But such a finding does not necessarily support the legal conclusion that Mr. Nunez was in custody.

Interviews at police stations are subject to heightened scrutiny. *United States v. Jacobs*, 431 F.3d 99, 105 (3rd Cir. 2005). Nevertheless, the fact that an interview is

8

conducted at a police station is itself insufficient to establish that the suspect was in police

custody.

> [P]olice officers are not required to administer *Miranda* warnings to
> everyone whom they question. Nor is the requirement of warnings to be
> imposed simply because the questioning takes place in the station house, or
> because the questioned person is one whom the police suspect. *Miranda*
> warnings are required only where there has been such a restriction on a
> person's freedom as to render him "in custody." It was that sort of coercive
> environment to which *Miranda* by its terms was made applicable, and to
> which it is limited.

*Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *see also*

*California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983)

(statement not custodial where suspect was told he was not under arrest and voluntarily

accompanied police to station to discuss murder).

When determining whether a suspect is in custody for purposes of *Miranda*, we

look at the totality of the circumstances, and ask whether a reasonable person in the

suspect's position would believe his or her freedom was curtailed to the degree associated

with a formal arrest. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728

(2013). In the context of a police interview, a related inquiry asks whether a reasonable

suspect would feel free to terminate the interview and leave. *State v. Lorenz*, 152 Wn.2d

22, 38, 93 P.3d 133 (2004); *see also State v. Grogan*, 147 Wn. App. 511, 518, 195 P.3d

1017 (2008) (hour-long polygraph and subsequent interview, both at police station, held

to be noncustodial largely because suspect was permitted to leave interview when he asked to leave), *review granted*, 168 Wn.2d 1039, 234 P.3d 169 (2010).

Here, Mr. Nunez was a suspect in a child molestation investigation. Detective Nunez asked to speak with Mr. Nunez about allegations made against him. Any concern that Mr. Nunez might have had concerning his freedom was allayed when the detective permitted him to work that day and discuss the allegations after work. After work, Mr. Nunez went to the sheriff's office, at the time he chose, to discuss the allegations. Once he arrived, he was not placed under arrest or handcuffed. Instead, he was led to a private room where the first 10 minutes were spent building rapport between him and two officers. One of the officers described Mr. Nunez as quite cheerful during this process. Once rapport was established, the officers determined it was time to ask questions concerning the allegations. But before asking these questions, the officers sought to advise Mr. Nunez of his *Miranda* warnings so to dispel the inherent compulsion of answering their questions. All but one of his rights were read to him. The reading of these rights was for Mr. Nunez's benefit and in no way caused the nature of his custody to change. He quickly began confessing to crimes.

At the point in time when Mr. Nunez confessed to the first crime, a reasonable suspect in his position no longer would believe he was free to leave the interview. It was

No. 34094-5-III
*State v. Nunez*

at this time that the interview turned from noncustodial to custodial.  Because Mr. Nunez

was not properly advised of his *Miranda* warnings before this time, all subsequent

statements after his first confession must be suppressed.  *State v. Daniels*, 160 Wn.2d

256, 267, 156 P.3d 905 (2007).

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

11